A99A0212. LANIER v. THE STATE.
(517 SE2d 106)

BLACKBURN, Presiding Judge.

Steven A. Lanier appeals his convictions, following a jury trial, of driving after being declared a habitual violator and two counts of driving under the influence of alcohol. For the reasons set forth below, we affirm Lanier's convictions.

1. In his first enumeration of error, Lanier contends that the State failed to prove that he was properly served with notice of his license revocation.

OCGA § 40-5-58 (b) provides that the State must notify any person found to be a habitual violator "by certified mail, with return receipt requested; or, in lieu thereof, notice may be given by personal service upon such person." At trial, in the present case, the State sought to introduce two certified documents, Exhibits 7 and 8, reflecting that Lanier had been served with notice of his habitual violator status. Lanier's trial counsel objected, raising an insufficient foundation argument. The Court reserved ruling on Exhibit 7, which was admitted properly at a later point, and tacitly admitted Exhibit 8. See *Hite v. State*, 208 Ga. App. 267, 269 (430 SE2d 125) (1993) (evidence introduced but not expressly admitted was tacitly admitted).

Exhibit 8 was a document entitled "Official Notice of Revocation and Service by Court" which was signed by Lanier acknowledging that he was personally served with notice of the habitual violator revocation order. Lanier's foundation objection was without merit, and the trial court properly admitted it. Furthermore, both Lanier and the State referred to his status as a habitual violator in their closings. Therefore, viewing the evidence in the light most favorable to the verdict, it was sufficient under the standard of *Jackson v. Vir-*

*ginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to prove that Lanier had been validly served with notice of his status as a habitual violator.

2. In his second enumeration of error, Lanier contends that his trial counsel was ineffective in that he did not object to hearsay statements from an officer regarding Lanier's knowledge of his status as a habitual violator which the officer received from the dispatcher.

To show that trial counsel was ineffective, Lanier must show both that counsel's performance was deficient and that the deficiency so prejudiced his defense that a reasonable probability exists that the outcome of trial would have been different but for the deficiency. *Hassan v. State*, 231 Ga. App. 783, 784 (500 SE2d 644) (1998). Lanier's trial counsel did not object to the officer's testimony regarding his dispatcher's report. Furthermore, even if such testimony was improperly admitted, it was cumulative of the evidence properly admitted in Exhibits 7 and 8. Lanier has failed to meet this burden of showing ineffective assistance of counsel.

3. Lanier contends that no competent evidence was admitted that he operated his vehicle in a less safe manner.

> OCGA § 40-6-391 (a) (1) makes it unlawful for a person to drive or be in actual physical control of any moving vehicle [while u]nder the influence of alcohol to the extent that it is less safe for the person to drive. There is no requirement that the person actually commit an unsafe act.

(Punctuation omitted.) *Apperson v. State*, 225 Ga. App. 804, 805 (2) (484 SE2d 739) (1997). See also *Shannon v. State*, 205 Ga. App. 831, 833 (4) (424 SE2d 51) (1992).

Trooper Gunnin testified that, as he was operating a drive-through license check point, Lanier failed to heed his audible and visual signals to stop at the intersection where road flares and flashing blue lights had been posted. Lanier pulled through the check point and traveled an additional 100 yards before stopping. Trooper Gunnin testified that he detected a strong odor of alcoholic beverage about Lanier, that Lanier's eyes were red, his speech was slurred, and he was unsteady on his feet. Additionally, Lanier admitted, at the time of the stop, that he was "drunk." Thus, a rational trier of fact could have found Lanier guilty beyond a reasonable doubt of driving under the influence to the extent that he was a less safe driver. See *Jackson v. Virginia*, supra.

4. Lanier contests the admissibility of the results of the Intoximeter 5000, arguing that there was no evidence as to what significance should be attributed to the results.

Trooper Gunnin testified that he read the implied consent notice

to Lanier, which was admitted into evidence. The notice provides, among other things, that Georgia law requires submission to a State-administered chemical test of the defendant's breath to determine whether the defendant is under the influence of alcohol. The notice further provides that if the results of the test indicate an alcohol concentration of 0.10 grams or more the defendant's driver's license may be suspended. Trooper Gunnin testified that he administered a breath test on an Intoximeter 5000 which produced the results of .136 and .137. Additionally, the trial court charged the jury that, pursuant to OCGA § 40-6-391 (a) (5),

> it shall be unlawful for any person to drive or be in actual physical control of any moving vehicle while that person's alcohol concentration is .10 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.

From this evidence, it is clear what the Intoximeter 5000 was testing and what the numerical results meant. "[J]urors are entitled to use their own common sense as intelligent human beings on many questions." *Feldschneider v. State*, 127 Ga. App. 745, 746 (1) (195 SE2d 184) (1972). Therefore, it was not error to admit the results without testimony that it meant .136 grams of alcohol concentration in Lanier's blood.

5. Lanier contends that there was no competent evidence showing that the Intoximeter 5000 was operating properly at the time it was used in connection with this case. Contrary to Lanier's enumeration, the State introduced a certificate of inspection performed before Lanier's test and after Lanier's test showing that the machine was working properly. In addition, Trooper Gunnin testified that the instrument was operating properly at the time he performed the test on Lanier. Contrary to Lanier's argument, an inspection directly before and after each defendant's test is not required. Cf. *Rowell v. State*, 229 Ga. App. 397, 398-399 (1) (b) (494 SE2d 5) (1997).

6. Lanier contends that he was afforded ineffective assistance of counsel because his trial counsel failed to object to Trooper Gunnin's testimony regarding the results of the Intoximeter 5000. Contrary to appellate counsel's position, trial counsel did object several times to the admission of the results. Furthermore, as we have found that the results were admissible, trial counsel was not ineffective on this ground. See *Hassan*, supra.

7. In his final enumeration of error, Lanier asserts that the trial court erred in denying his motion for new trial. However, this enumeration is not supported by any argument or citation of authority

different from that contained in his previous enumerations. Therefore, based on Divisions 1 through 6 above, the trial court properly denied Lanier's motion for new trial.

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 4, 1999.

*Fred R. White*, for appellant.
*Richard R. Read, District Attorney, Robert G. Mikell, Assistant District Attorney*, for appellee.